﻿Citation Nr: AXXXXXXXX
Decision Date: 03/31/20 Archive Date: 03/31/20

DOCKET NO. 190923-32185
DATE: March 31, 2020

ORDER

Entitlement to service connection for prostate cancer as due to exposure to herbicide agents is granted.

FINDINGS OF FACT

1. The Veteran was exposed to herbicide agents while serving in Thailand at the Takhli Royal Air Force Base during the Vietnam Era.

2. The Veteran’s current diagnosis of prostate cancer is presumed to be related to the exposure to herbicide agents during service.

CONCLUSION OF LAW

The criteria for service connection for prostate cancer are met. 38 U.S.C. §§ 1101, 1110, 1116, 5107 (2012); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309(e) (2019). 

REASONS AND BASES FOR FINDINGS AND CONCLUSION

The Veteran served on active duty from March 1967 to November 1973.

The Board notes that the rating decision on appeal was issued in August 2017. In September 2017, the Veteran submitted a timely notice of disagreement; however, in July 2018, the Veteran elected the modernized review system pursuant to 38 C.F.R. § 19.2(d)), also known as the Appeals Modernization Act (AMA). This decision has been written consistent with the new AMA framework.

Subsequent to the Veteran’s selection of the RAMP processing, the RO issued a November 2018 rating decision, which continued to deny the claim for service connection for prostate cancer. The Veteran timely appealed the claim directly to the Board, choosing Direct Review.

Service Connection for Prostate Cancer

The Veteran asserts that the diagnosed prostate cancer is related to his exposure to herbicide agents while stationed in Thailand during the Vietnam Era.

The Veteran has a current diagnosis of prostate cancer. See e.g., August 2017 VA examination report.

Notably, prostate cancer is among those diseases associated with exposure to herbicide agents under 38 C.F.R. § § § 3.309(e). 38 C.F.R. § 3.307(a)(6)(ii).

Moreover, the Board notes that the use of Agent Orange and other herbicide agents has been confirmed in some portions of Thailand. The Board notes that a May 2009 fast letter issued by the VA indicated that while the Thailand CHECO Report did not report the use of tactical herbicide agents on allied bases in Thailand, it did indicate sporadic use of non-tactical (commercial) herbicide agents within fenced perimeters. Therefore, if a Veteran’s military occupational specialty (MOS) or unit was one which regularly had contact with the base perimeter, there was a greater likelihood of exposure to commercial pesticides, including herbicide agents. See Fast Letter 09-20 (May 6, 2009).

Additionally, VA’s Compensation & Pension Service (C&P) has issued information concerning the use of herbicides in Thailand during the Vietnam War. In a May 2010 bulletin, C&P indicated that it has determined that there was significant use of herbicide agents on the fenced in perimeters of military bases in Thailand intended to eliminate vegetation and ground cover for base security purposes. A primary source for this information was the declassified Vietnam era Department of Defense (DOD) document titled Project CHECO Southeast Asia Report: Based Defense in Thailand. Although DOD indicated that the herbicide use was commercial in nature rather than tactical (such as Agent Orange), C&P has determined that there was some evidence that herbicide agents of a tactical nature, or that of a “greater strength” commercial variant, were used. Given this information, C&P has determined that special consideration should be given to veterans whose duties placed them on or near the perimeters of Thailand military bases. Consideration of exposure to herbicide agents on a “facts found or direct basis” should be extended to those veterans. Significantly, C&P stated that “[t]his allows for presumptive service connection of the diseases associated with herbicide exposure.” The May 2010 bulletin identifies several bases in Thailand, including Takhli. C&P indicated that exposure to herbicide agents should be acknowledged on a facts found or direct basis if (1) a United States Air Force veteran served at one of the air bases as a security policeman, a security patrol dog handler, a member of a security police squadron, or otherwise served near the air base perimeter, as shown by his or her military occupational specialty, performance evaluations, or other credible evidence; (2) an Army veteran was a member of a military police unit that served at or near a base perimeter in Thailand; or (3) an Army veteran who served on an air base in Thailand and provided perimeter security. 

Here, the Veteran’s service in Takhli Air Force Base in Thailand is verified. Therefore, the dispositive question remaining is whether the Veteran’s MOS led him to the perimeter of his base in Thailand. Here, the RO provided some conflicting evidence. To the August 2017 VA examiner, the RO noted that exposure was conceded, and in fact, the examiner provided a positive nexus opinion, indicating that a diagnosis was confirmed and that it was a presumptive disease. Subsequently, however, the RO requested information as to whether the Veteran’s MOS of aircraft maintenance specialist resulted in exposure to herbicide agent and the JSRRC concluded that “no documentation or evidence has been found in the holdings of the Historical Research Agency showing that tactical herbicides, such as Agent Orange, were ever used on any USAF installation in Thailand for vegetation control during the Vietnam Era.” 

In this regard, the Board notes that the Veteran provided various theories for the claimed exposure, namely, (a) that the hanger itself was sprayed to control insect infestation; (b) that the area around the hanger was sprayed to control vegetation; (c) that he actually left the base to go into town and as such had to be at the base perimeter; and (d) that his MOS led him to the flight line and close to the base perimeter on a regular basis. While the first two theories are unsubstantiated based on the evidence received by the JSRRC, the Veteran provided evidence in support of the other two theories of exposure to herbicide agents. First, he submitted photographs he took, at least one that specifically shows the fence around the base perimeter from close proximity. Second, he submitted aerial view of the base with notations of locations he was at, some which show close proximity to the base perimeter. 

Based on the foregoing, after review of all the evidence, the Board finds that the evidence is at least in equipoise as to whether the Veteran was at the base perimeter on a regular basis. The Board finds that his lay assertions have been consistent throughout the pendency of this appeal. In addition, not only are his statements competent, but also credible and supported by the evidence he provided in support of his claim such as photographs and maps of the base with explanations regarding his MOS duties. See Layno v. Brown, 6 Vet. App. 465 (1994). The RO was unable to confirm the Veteran’s presence at the base perimeter, but also did not attempt to verify this evidence and instead just focused on the Veteran’s assertions regarding spraying inside and outside the hanger. In addition, the RO did not find any evidence that contradicts the Veteran’s assertions and specifically obtained VA examinations as if exposure was conceded.

(Continued on the next page)

 

Accordingly, as a factual matter, affording the Veteran the benefit of the doubt, the Board finds that evidence is in relative equipoise that this Veteran had regular access to the perimeter of the base in Thailand, and as such, the Board finds that he is presumed to have been exposed to herbicide agents during his service in Thailand. As the Veteran’s currently diagnosed prostate cancer is among those diseases as associated with exposure to herbicide agents, entitlement to service connection is warranted on a presumptive basis. 38 U.S.C. § 5107; 38 C.F.R. § 3.102.

 

 

S. B. MAYS

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board A. Yaffe, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.